FILED _____ ENTERED
_____ LODGED _____ RECEIVED

FEB 1 6 2016

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE SEDS LISTED IN ATTACHMENT A | Case No. _____ |

**16-0234TJS** to

**16-0238TJS**

### AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Task Force Officer (TFO) **Shane Lettau**, Drug Enforcement

Administration (DEA), being duly sworn, deposes and states as follows:

1.      This is an Affidavit in support of search warrants authorizing the search of an

**Apple iPhone** cell phone, an **LG ZTE** cell phone, **ZTE** cell phone, a **Samsung** cell phone, and

an **AT&T ZTE** cell phone identified in *Attachments A1 and A2* and hereinafter referred to as the

"**Subject Electronic Devices (SEDs).**" As detailed further below, during the execution of a

search warrant related to an investigation of Corey **Riley** (hereinafter the **Target Subject**), the

**SEDs** were found pursuant to the arrest and subsequent search & seizure warrants pertaining to

the **Target Subject** on January 26, 2016. The **SEDs** are currently in DEA custody.

2.      The applied-for warrant would authorize the forensic examination of the **SEDs** for

the purpose of identifying electronically stored data particularly described in *Attachment B*.

3.      Because this Affidavit is being submitted for the limited purpose of establishing

probable cause for a search warrant, I have not included every detail of every aspect of the

investigation. Rather, I have set forth only those facts that I believe are necessary to establish

probable cause. I have not, however, excluded any information known to me that would defeat a

determination of probable cause. The information contained in this Affidavit is based upon my

personal knowledge, my review of documents and other evidence, and my conversations with

other law enforcement officers and other individuals. I have set forth only the facts I believe are

1

necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of

criminal activity, to wit, conspiracy to distribute controlled substances in violation of 21 U.S.C. §

846 and possession with the intent to distribute controlled substances in violation of 21 U.S.C. §

841 (a)(1) are presently located within the **SEDs.**

## YOUR AFFIANT

4.      Your Affiant, Detective Shane Lettau, has been a duly sworn member of the

Baltimore Police Department (BPD) since January 29, 2002, and is a Task Force Officer (TFO)

with the United States Drug Enforcement Administration (DEA).  I am "an investigative or law

enforcement officer" of the United States within the meaning of Title 18, United States Code,

Section 2510(7), that is, an officer of the United States who is empowered by law to conduct

investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18,

United States Code.

5.      Your Affiant is currently assigned to the Baltimore Police Department's

Operational Intelligence Section - Investigation & Intelligence Division, working as a TFO for

the DEA.  Since your affiant began his career as a Baltimore Police Officer in January 2002, he

has been assigned to the following units: Patrol Division, Mobile/Special Enforcement Teams,

Organized Crime Division Narcotics Investigation, Violent Crime Impact Section Violent Repeat

Offender Squad and Violent Crime Impact Section HIDTA.

6.      Your affiant successfully attended the Baltimore Police Academy, completing

twenty-six weeks of training, including a forty-hour block of specialized training within the areas

of identification, packaging and distribution of Controlled Dangerous Substances (hereinafter

referred to as "CDS").  Your affiant has taken a sixteen-hour enhanced training course entitled

"Drug Identification," focusing on the distribution, packaging, identification, and case law of

CDS. Your affiant has also successfully completed a sixteen-hour course entitled "Criminal

2

Street Gangs – Overview," which explained how criminal gangs utilize narcotics sales to finance criminal enterprises. Your affiant has successfully completed a sixteen-hour course entitled "Introduction to Money Laundering" and an additional twenty-four hour course entitled "Money Laundering Techniques," which focused on recognizing potential money laundering violations, both international and domestic, while investigating narcotics-related violations. Your affiant also attends annual in-service training hosted by the Baltimore Police Department, which reviews and updates in the areas of CDS recognition, recent case law, and current trends. Your affiant has directly and/or indirectly participated in the arrest of well over 500 persons for violations of CDS Laws, which has resulted in the seizure of various amounts of heroin, cocaine, marijuana and other illegal substances. Your affiant has been involved in the preparation and/or execution of well over 100 search and seizure warrants, during which time CDS, Firearms, and U.S. Currency have been recovered.

7.      Your affiant is familiar with the language, terminology, and street slang used by persons who purchase and distribute CDS. Your affiant is also familiar with the prices and packaging and paraphernalia used to distribute and manufacture CDS. Your affiant has surveilled numerous narcotic transactions on the streets of Baltimore City and within the Baltimore Metropolitan Area. As a result of these observations, thousands of arrests have been made for CDS violations and narcotics transactions. Furthermore, your affiant has conducted surveillance and enforcement activities in other States and Africa as part of investigations of narcotics related activity.

8.      Your affiant has interviewed numerous confidential informants, cooperating witnesses, street level, mid-level, narcotics distributors/traffickers, and narcotics importers along with common narcotics users. This has provided your affiant intimate insight into drug

3

trafficking patterns.  Your affiant is also familiar with the counter surveillance measures and techniques utilized against Law Enforcement and by narcotic traffickers.

9.      Your affiant has been personally involved in numerous investigations concerning the possession, manufacture, distribution and importation of controlled substances into the United States of America and Africa.  Through training and experience, your affiant has become familiar with the operations of international drug trafficking organizations in various parts of the world, including South America, Africa and the Middle East.

10.     Your affiant has testified as an expert in excess of 30 times to the identification, packaging, and sale of CDS in the District and Circuit Courts of Baltimore, Maryland.  Your Affiant has also testified in Grand Jury on a number of occasions and as a result, the Grand Jury returned True Bills and the defendants were indicted in both State and Federal Courts. Your affiant has been the Affiant of three prior Title III investigations, co-case agent of one prior federal Title III Investigation and participated in approximately five other Title III investigations as either part of a surveillance team or monitor, your affiant had the opportunity to listen to and interpret tens of thousands of phone calls as they pertained to varying aspects within the narcotics field.

11.     I am familiar with the mode of operation of individuals who commit drug trafficking offenses, including, but not limited to, their use of electronic devices to plan and coordinate drug trafficking activities.  Based on my knowledge, training, and experience, individuals committing drug trafficking offenses frequently use cellular telephones, communication devices, and other electronic media storage to further their illegal activities. Based upon my training, experience and participation in this and other investigations, I know the following:

4

a.    The fruits and instrumentalities of criminal activity are often concealed in digital form.  Furthermore, digital camera technology is often used to capture images of tools and instrumentalities of pending criminal activity.  All of the above cell phones have both digital storage capacity and digital camera capabilities.

b.    Individuals engaged in drug trafficking offenses often use cell phones to communicate with suppliers; to place orders with suppliers; to communicate with customers; to receive orders from customers; and to choose meeting times and locations for the distribution of controlled substances.  The individuals engaging in drug trafficking will often use a combination of voice calls and text messages to coordinate drug transactions.  Individuals engaged in drug trafficking offenses also use digital storage devices to maintain telephone number "contact lists" of individuals who may have assisted in the planning of this and other criminal activity.

## PROBABLE CAUSE

12.    The Since October 2015, members of the DEA and BPD have been involved in an investigation into the drug trafficking activities of an individual identified as Corey **Riley**. Information gathered from three separate confidential sources of information indicated that **Riley** was a kilogram quantity heroin trafficker operating within the Baltimore Metropolitan area.  It was believed that **Riley** was trafficking between 10-20 kilograms of heroin per month.

13.    **Riley** is on federal supervised release, before this court arising from a previous conviction in criminal case RDB-05-0487.  Through the investigation, your affiant learned that **Riley** had a residence located at 3700 Toone Street, Apartment 2509, Baltimore, Maryland (Target Residence).   Administrative subpoenas issued to the Target Residence's management company and Baltimore Gas and Electric (BGE) confirmed the Target Residence as **Riley's**. **Riley** paid for the residence, was the only individual listed on the lease agreement, maintained consistent communications with management and the BGE account for the Target Residence was

in **Riley's** name. Your affiant learned that a vehicle known to be operated by **Riley** frequented the address, however the garage was private property with gated access, therefore law enforcement officers could not get access the vehicle to further the investigation.

14.     Parallel to the DEA investigation, in January 2016, investigators with the BPD's Northwest Operations Unit received an anonymous tip to the Metro Crime Stoppers help line (Tip #15396) about the trafficking activities of **Riley**. The tip identified **Riley** by name, identified the vehicle he was driving and stated that **Riley** "transports drugs from state to state…" The anonymous caller identified **Riley's** residence as 4922 Greenspring Avenue, Baltimore, Maryland. Based on the tip, a BPD detective began to conduct surveillance of 4922 Greenspring Avenue. On two separate occasions, the detective observed **Riley** at the residence, most recently on January 26, 2016.

15.     On January 26, 2016 BPD detectives were watching the residence. **Riley** was observed exiting the residence carrying two large black bags and entering an awaiting vehicle. **Riley** placed a black suitcase in the trunk of the vehicle and **Riley** then entered the rear passenger compartment maintaining possession of the second bag. A vehicle stop was conducted and the driver was identified as a driver for "Uber", an internet based car service. During the stop, **Riley** appeared extremely nervous. Based on **Riley's** behavior, the previous observations, and the previous information concerning **Riley**, a BPD K-9 unit was summoned. The K9 made a positive indication for the odor of narcotics on the vehicle's trunk. A search of the trunk recovered **Riley's** black suitcase. Inside the suitcase there was a kilo press with a white powder residue suspected CDS and a smaller bag containing several kilograms of suspected heroin. The bag **Riley** had kept on his person was recovered from the rear passenger seat and contained a large sum of U.S. Currency. **Riley** was arrested and transported to the Northwest District Police Station. **Riley** is currently on release following posting a $500,000 bail.

6

16.    During the stop, the driver confirmed that he worked for Uber and was transporting **Riley** from Greenspring Avenue to 3700 Toone Street, Baltimore, Maryland (Target Residence).  In plain view, it was observed that the driver's GPS had a destination address of 3700 Toone Street.

17.    On January 27, 2016 BPD detectives applied for and received authorization from Judge Holt-Stone of the District Court of Maryland for Baltimore City to search the 4922 Greenspring Avenue residence.  During the search, investigators recovered several more kilo presses with suspected CDS residue, U.S. Currency, a handgun, ammunition, large quantities of CDS manufacturing materials, and additional quantities of suspected heroin.  After the seizure, your affiant and TFO Keith Sokolowski were notified of the incident.  Arrested at the residence was a civilian with the initials B P, who identified that the residence was his.  The **SED's** (identified in *Attachments A & C* as "**A, B, C & D**") were seized from **Riley's** person pursuant to his arrest.

18.    It was noted following the arrest that **Riley** utilized the cellular phone based application "Uber" to arrange transport.  Your affiant knows **Riley** to operate at least two vehicles.  **Riley** was utilizing Uber for transport on the day of his arrest and it is believed that he would do so when he engages in narcotic activity.  Uber (www.uber.com) is a mobile ride request company headquartered in San Francisco, California.  The web service allows consumers with smartphones to submit a trip request, which is then routed to a driver in a specific geographical area.  The driver will receive the request for transport and appear to transport the requestor much like a cab service operates.  It is believed that routes of travel and previous requests for service by **Riley** will be stored in the **SED's** web application possessed by **Riley** that will reveal additional locations traveled.

19.    On January 27, 2016 your affiant applied for and received authorization from the Honorable Timothy Sullivan, Magistrate Judge for the United States District Court for the District of Maryland (Warrant# TJS-16-0166, incorporated by reference herein) to search the location of 3700 Toone Street, Apartment 2509. Items recovered from the dwelling included an additional amount of U.S. Currency, a brown substance believed to be heroin, as well as numerous amounts of paperwork and an additional SED (identified in Attachments A1 and A2 as "E").

20.    A preliminary search of the paper documents found numerous purchase receipts for vehicles under the company name "037 Autosport LLC." addressed in Montgomery, Alabama. In addition to Riley, two other individuals' names appeared on the purchase receipts, however your affiant recognized a phone number previously identified to Riley as the listed business number. It is believed that these documents are evidence of money laundering facilitated by Riley and additional evidence of the activity will appear in the SED's. **Riley** recently received and served a 90 month federal sentence for Conspiracy to Distribute Heroin in 2008. He is currently on supervised release from the federal conviction. The **SED's** were seized and are currently in the custody of the DEA stored in a temporary evidence locker at the Baltimore District Office.

21.    Your affiant knows based upon training, knowledge and experience that individuals involved in narcotics trafficking often utilize multiple cellular phones to compartmentalize their business and avoid detection by law enforcement. By utilizing many phones, narcotic traffickers can elude intrusive wire and electronic interception and prevent exposure if another member of their organization is arrested because law enforcement or the arrested individual would have access to only a portion of the overall organization without the additional information from the other phones.

## CONCLUSION

22.     Based upon the information set forth in this affidavit, I believe that sufficient

probable cause exists to believe that in the **SEDs**, there is evidence of criminal activity, to wit,

conspiracy to distribute controlled and dangerous substances and possession with the intent to

distribute controlled and dangerous substances.

WHEREFORE, in consideration of the facts presented, I respectfully request that this

Court issue search warrants for the **SEDs**, and authorize the search and the seizure of the items

described in Attachments A1 and A2, according to the protocols set forth in Attachment B where

applicable, which constitute fruits, evidence and instrumentalities of violation of 21 U.S.C. § 846

and possession with the intent to distribute controlled and dangerous substances in violation of

21 U.S.C. § 841 (a)(1).

Shane Lettau
Task Force Officer
Drug Enforcement Administration


Sworn to before me this __29__ th day of January 2016.


The Honorable Timothy J. Sullivan
United States Magistrate Judge

**16-0234TJS** to **16-0238TJS**

## ATTACHMENT A1 – DESCRIPTION OF LOCATIONS/SEDs TO BE SEARCHED

The following items:

a. **Apple iPhone, Model A1549, bearing IMEI: 359296065756836, FCC ID# BCG-E2816A; (A photograph of the cellular phone appears in Attachment A2).** The device will be charged and powered on. The device and all readable and searchable contents will be attempted to be downloaded to a "CellBrite" device. The "CellBrite" device allows the user to bypass any password protected utility on the phone. The contents downloaded on the CellBrite device will then be copied to a readable computer disc and reviewed by your affiant. However, your affiant knows through experience that Apple devices hold a unique encryption that typically only Apple Inc. can bypass. Therefore, it is possible that your affiant may have to send the SED to Apple Inc. located in California for the search. A search warrant return will be provided to the Court thereafter.

b. **AT&T ZTE cellular phone, Model Z812, bearing IMEI: 869578020358565, FCC ID# SRQ-Z812, SN: 322753312307 (A photograph of the cellular phone appears in Attachment A2).** The device will be charged and powered on. The device and all readable and searchable contents will be downloaded to a "CellBrite" device. The "CellBrite" device allows the user to bypass any password protected utility on the phone. The contents downloaded on the CellBrite device will then be copied to a readable computer disc and reviewed by your affiant. A search warrant return will be provided to the Court thereafter

c.  **Verizon LG cellular phone, Model LG-VN251SNPP, bearing MEID HEX: A1000040EE903E, FCC ID# BEJVN251, SN: 511CYRN0204B14 (A photograph of the cellular phone appears in Attachment A2)**.  The device will be charged and powered on.  The device and all readable and searchable contents will be downloaded to a "CellBrite" device.  The "CellBrite" device allows the user to bypass any password protected utility on the phone.  The contents downloaded on the CellBrite device will then be copied to a readable computer disc and reviewed by your affiant.  A search warrant return will be provided to the Court thereafter.

d.  **AT&T ZTE cellular phone, Model Z432, bearing IMEI: 863487021501825, SN: 9B04197104B9, FCC ID# SRQ-Z432 (A photograph of the cellular phone appears in Attachment A2)**.  The device will be charged and powered on.  The device and all readable and searchable contents will be downloaded to a "CellBrite" device.  The "CellBrite" device allows the user to bypass any password protected utility on the phone. The contents downloaded on the CellBrite device will then be copied to a readable computer disc and reviewed by your affiant.  A search warrant return will be provided to the Court thereafter.

e.  **Samsung cellular phone, Model SPH-M270, bearing HEX: A0000047EF225A, DEC: 268435463115671896, FCC ID# A3LSPHM270  (A photograph of the cellular phone appears in Attachment A2)**.  The device will be charged and powered on.  The device and all readable and searchable contents will be downloaded to a "CellBrite" device.  The "CellBrite" device allows the user to bypass any password protected utility on the phone. The contents downloaded on the CellBrite device will then be copied to a readable computer disc and reviewed by your affiant.  A search warrant return will be provided to the Court thereafter.

11

shall be searched according to the protocol listed on Attachment B for the following items to include but not limited to: (1) lists of customers, co-conspirators, sources of supply and related identifying information, (2) types, amounts, and prices of CDS and/or firearms trafficked as well as dates, places, and amounts of specific transactions, (3) any information related to sources of CDS and/or firearms (including names, addresses, phone numbers, or any other identifying information), (4) all bank records, checks, credit card bills, account information, and other financial records, (5) any information related to use of or trafficking of narcotics and/or firearms, and (6) information reflecting the location of the phone. The **Subject Electronic Device** shall also be searched for evidence of user attribution showing who used or owned the **Subject Electronic Device** at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

16-0234TJS   to   16-0238TJS

**ATTACHMENT A2 – Devices to be searched**

**A)**





**B)**





**Model:Z812**

FCC ID:SRQ-Z812

IMEI:869578020358565

S/N: 322753312307

SKU: S732A

H/W:wuzA
Made in China

ZTE (BC)

<u>C)</u>





**D)**





E)





SAMSUNG

Model : SPH-M270 UD  FCC ID : A3LSPHM270
RATED : 3.7V ⎓ ; 1000mA
For Information call 1-888-211- 4PCS
DEC 268 435 463 115 671 898

14.06

HEX A00 000 47E F22 5A

MADE IN CHINA

## ATTACHMENT B – SEARCH PROTOCOLS

This warrant authorizes the search of electronically stored information and other documents related to the items listed on Attachment A1 and depicted in Attachment A2.

The device will be charged and powered on. The device and all readable and searchable contents will be downloaded to a "CellBrite" device. The "CellBrite" device allows the user to bypass any password protected utility on the phone. The contents downloaded on the CellBrite device will then be copied to a readable computer disc and reviewed by your affiant. A search warrant return will be provided to the Court thereafter.

Because of the possibility that the files examined pursuant to the warrant will include information that is beyond the scope of what the United States has demonstrated the existence probable cause to search for, the search shall be conducted in a manner that will minimize to the greatest extent possible the likelihood that files or other information for which there is not probable cause to search is not viewed.

While this protocol does not prescribe the specific search protocol to be used, it does contain limitations to what government investigators may view during their search, and the searching investigators shall be obligated to document the search methodology used in the event that there is a subsequent challenge to the search that was conducted, pursuant to the following protocol:

With respect to the search of any digitally/electronically stored information that is seized pursuant to this warrant, and described in Attachment A hereto, the search procedure shall include such reasonably available techniques designed to minimize the chance that the government investigators conducting the search will view information that is beyond the scope for which probable cause exists.

The following list of techniques is a non-exclusive list which illustrates the types of search methodology that may avoid an overbroad search, and the government may use other procedures that, like those listed below, minimize the review of information not within the list of items to be seized as set forth herein:

a.      Use of computer search methodology to conduct an examination of all the data contained in such computer hardware, computer software, and/or memory storage devices to determine whether that data falls within the items to be seized as set forth herein by specific date ranges, names of individuals, or organizations;

b.      Searching for and attempting to recover any deleted, hidden, or encrypted data to determine whether that data falls within the list of items to be seized as set forth herein;

c.      Physical examination of the storage device, including digitally surveying various file directories and the individual files they contain to determine whether they include data falling within the list of items to be seized as set forth herein; and

d.      Opening or reading portions of files that are identified as a result of conducting digital search inquiries in order to determine their relevance.

18